***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Berger, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was duly self insured.
3. At all relevant times, an employment relationship existed between plaintiff and defendant. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from November 4, 1960, to the date of the hearing before the Deputy Commissioner and continuing.
4. Plaintiff was last injuriously exposed to asbestos during plaintiffs employment with defendant, Weyerhaeuser Company, and specifically, the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Defendant has stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnoses with asbestosis on December 10, 1997, by Dr. Dennis Darcey. The defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence.
6. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on December 10, 1997, was $59,929.00, which is sufficient to produce the maximum compensation rate for 1997, $512.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000. which was $588.00.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and the defendant stipulated that should the claim be found compensable, the defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. Should plaintiff be awarded compensation pursuant to N.C. Gen. Stat. § 9761.5(b), the deputy commissioner may include in the Opinion and Award language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62.5(b).
9. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The issues before the Industrial Commission are: (1) whether N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to this case; and (2) if so, what compensation, if any, is due the plaintiff?
11. The parties submitted to the Industrial Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. James Johnson
c. Dr. Caroline Chiles
d. Dr. Philip H. Lucas
e. Dr. Edwin Newman
f. Dr. Michael J. DiMeo
g. Dr. Allen Hayes
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from November 4, 1960, until the hearing before the Deputy Commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff has been employed by defendant for 39 years. Throughout his employment, he was exposed to asbestos at various places throughout the plant.
4. Defendant did not provide plaintiff with any respiratory protection to protect plaintiff from exposure to asbestos.
5. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1960 until the present.
6. Defendant admitted that the plaintiff does suffer from asbestosis, an occupational injury. The following medial records confirming the diagnosis of asbestosis and asbestos-related pleural disease were submitted to the Industrial Commission by counsel for the parties:
 a. The medical report of Dr. Dennis Darcey of the Division of Occupational and Environmental Medicine of Duke University, dated December 10. 1997. Dr. Darcey took an occupational history from the plaintiff, who stated he was exposed to asbestos dust from insulation materials and from brakes on the paper machines while employed by defendant. Plaintiff described his work as a maintenance man for defendant, which included ripping out asbestos insulation from pipes, valves, and boilers. Plaintiff also scraped and ground off asbestos gaskets from pipe flanges. He was not provided with a respirator. Plaintiff reported to have smoked less than a pack a day for 40 years.
 b. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff suffers from asbestosis and asbestos-related pleural changes based on the radiographic findings seen in the chest x-ray and high resolution CT of the chest. Dr. Darcey assigned a Class 2 respiratory impairment based on AMA Guidelines.
 c. Dr. Darcey, as part of his report, recommended that plaintiff undergo periodic monitoring for progression of asbestos-related disease, including pulmonary functioning and chest x-ray, because further deterioration in pulmonary function can occur even after exposure has ceased. He further recommended that plaintiff should avoid further exposure to asbestos dust. In addition to his increased risk of developing asbestosis, he was and remains at an increased risk of developing lung cancer and mesothelioma, as opposed to non-exposed individuals. Finally, medical monitoring is recommended.
 d. A chest x-ray dated July 19, 1997, interpreted by Dr. James Johnson of Piedmont Radiology in Salisbury, North Carolina, a B-reader. It was his conclusion that there were parenchymal changes present consistent with a pneumoconiosis.
 e. Dr. Caroline Chiles of Wake Forest University also reviewed the July 19. 1997, chest x-ray. It was her conclusion that there were both parenchymal and pleural changes present consistent with a pneumoconiosis.
 f. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated the same chest film, and the Full Commission finds as fact, that there were bilateral interstitial fibrotic changes consistent with asbestosis in a patient who had an adequate exposure history and latency period.
 g. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the July 19, 1997, chest film and indicated that there were parenchymal abnormalities consistent with pneumoconiosis present. Dr. Hayes further indicated in his report that the high resolution CT shows plaque including at least one calcification.
 h. Dr. Edwin Newman of Charlotte Radiology, a B-reader, also reviewed the same chest x-ray and concluded that there were parenchymal changes, which can be seen in pneumoconiosis or in idiopathic interstitial fibrosis.
 i. On January 7, 1999, plaintiff was examined by Dr. Michael J. DiMeo, a member of the North Carolina Occupational Disease Panel. The plaintiff advised Dr. DiMeo that he had smoked a pack or less a day for 42 years and has tried to quit many times in the past. Dr. DiMeo examined plaintiff, his CT and x-ray, and other medical records provided by plaintiff. Dr. DiMeo reported that plaintiff gave an excellent history for significant asbestos exposure. In addition, he noted that if the findings on the CT are actual, i.e., calcified pleural plaques and interstitial changes, this would give strong indication of asbestos-related lung disease. He classified plaintiff as-falling into AMA class II, or about 10-15% disabled.
7. Plaintiff does suffer from the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
8. Plaintiffs wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Berger ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed January 12, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417. 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. I17' Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's-Order of Removal, at a weekly rate of $588.00, commencing on January 12, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, December 13, 1999, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiffs counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff s eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 14th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER